UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| LENWORTH STYLE,<br>　　Plaintiff, | :<br>:<br>: |
| v. | :　Case No. 3:17-cv-00502(SRU) |
| JAMES MCGUIRE, ET AL.,<br>　　Defendants. | :<br>:<br>: |

# **INITIAL REVIEW ORDER**

The plaintiff, Lenworth Style, is incarcerated at the Brooklyn Metropolitan Detention Center in Brooklyn, New York. He has filed a civil action pursuant to 42 U.S.C. § 1983 against Hartford Correctional Center Officers Brown, Dastasi, and Doe, and Warden Faneuff, and pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens*"), against Assistant Federal Public Defender James Maguire and the U.S. Marshals.

To state a claim under section 1983, the plaintiff must allege facts showing that the defendant, a person acting under color of state law, deprived him of a federally protected right. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 930 (1982). In *Bivens*, the Supreme Court held that federal officials may be sued for damages in their individual capacities for violations of a person's constitutional rights. Thus, a *Bivens* action is the nonstatutory federal counterpart of a civil rights action pursuant to 42 U.S.C. § 1983. *See Ellis v. Blum*, 643 F.2d 68, 84 (2d Cir. 1981). My analysis of *Bivens* claims therefore parallels the analysis used to evaluate state prisoners' section 1983 claims. *See Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995) ("Because the two actions share the same 'practicalities of litigation', federal courts have typically incorporated § 1983 law into *Bivens* actions." (quoting *Burnett v. Grattan*, 468 U.S. 42, 50

(1984)).  To state a claim under *Bivens*, a claimant must show (1) a deprivation of a right secured by the Constitution and laws of the United States; and (2) that the deprivation of the right was caused by an official acting under color of federal law.  *See id.*

Under section 1915A of Title 28 of the United States Code, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous, malicious, or fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A.  Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and grounds upon which they are based and to demonstrate a plausible right to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  Conclusory allegations are not sufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

On October 18, 2016, Style arrived at Hartford Correctional Center ("Hartford Correctional").  *See* Compl., Exs., Doc. No. 1-1 at 6, 21.  On October 31, 2016, Correctional Officer Brown informed Style that he had an attorney visit, but did not identify the attorney by name.  *See* Compl., Doc. No. 1 at 1.  Style was not aware that any attorney visit had been scheduled and did not want to meet with the attorney who had been appointed to represent him in his federal criminal case due to a conflict of interest.  *See id.*  Officer Brown and Officer Dastasi informed Style that the visit was about the fact that one of his kids had died.  *See id.*  Neither

2

officer disclosed the name of the child who had passed away. *See id.* Nor did they know the name of the attorney who had come to visit Style. *See id.*

Officers Brown and Dastasi handed Style a pass to go down to the area where he could visit with the attorney who had come to the facility. *See id.* When he arrived at the attorney visitation area, Style questioned Officer John Doe #1 about the identity of the attorney who had come to visit him. *See id.* Officer John Doe #1 was unable to read the signature in the log book of the attorney who had come to visit Style. *See id.* Without waiting to meet with the attorney, Style asked another officer to escort him back to his housing unit. *See id.*

When he arrived back at his housing unit, Style asked Officer Brown for permission to call his family to find out which of his children had passed away. *See id.* Officer Brown informed Style that his shift had ended and Style would have to ask for a telephone call from the officer assigned to the next shift. Style asked the next shift officer, John Doe #2, for permission to make a call to his family. *See id.* Officer John Doe #2 informed Style that he would have to wait to make the call until after a count had been taken of all inmates in the unit. *See id.*

Style then asked Officer John Doe #3 to make a telephone call to his family and the officer told Style he would have to wait until 6:30 pm to make his call and called him a "dumbass." *See id.* Style asked Officer John Doe #3 if he could speak to a mental health worker. *See id.* Officer John Doe #3 permitted Style to go the mental health department. *See id.* A mental health worker granted Style's request to call his sister who confirmed that no one had died. *See id.*

Style filed several inmate requests seeking an investigation into the dissemination of false information regarding a death in his family by Officers Brown and Dastasi. *See id.* On November 1, 2016, Style gave a statement to Captain Green as part of the investigation. *See id.*

On November 3, 2016, Assistant Federal Public Defender James Maguire visited Style. *See id.* at 8-9. Style claims that Attorney Maguire apologized for falsely informing correctional officers that one of his children had passed away. *See id.* at 9. Style asked Attorney Maguire to leave because he did not want Maguire to act as his attorney and had allegedly already tried to fire Maguire as his attorney on two previous occasions. *See id.*

On December 21, 2016, Captain Green spoke with Style regarding the investigation into the information that had been disseminated about his children's wellbeing. *See id.* Captain Green informed Style that the message that a child had passed away had been intended for another inmate who met with Attorney Maguire on October 31, 2016. *See id.* at 8-9. On December 23, 2016, Style received a written reply from Warden Faneuff confirming that the information regarding the death of a child had been mistakenly disseminated to Style instead of to the proper inmate. *See* Compl., Exs., Doc. No. 1-1 at 27. Warden Faneuff apologized for any distress the incident had caused Style. *See id.*

Style wrote to Commissioner Semple regarding the October 31, 2016 incident. *See* Compl., Doc. No. 1 at 9. On January 27, 2017, Warden Faneuff and another officer allegedly verbally threatened and harassed Style in Warden Faneuff's office. *See id.*

Style claims that Hartford Correctional officials delayed delivery of legal papers that had been sent to him at the facility on December 15, 2016. *See id.* Style received the legal mail on December 27, 2016. The legal mail had already been opened outside of his presence. *See id.*

Style claims that the U.S. Marshals knew about the incident that occurred on October 31, 2016 and that he was not receiving medical and dental treatment at Hartford Correctional. *See id.* On January 24, 2017, Judge Covello authorized a transfer of Style from Hartford

4

Correctional to a federal prison facility. *See id.* The U.S. Marshals transferred Style to a federal detention facility on February 2, 2017. *See id.*

Style claims that he filed this lawsuit to get to the bottom of what happened on October 31, 2016. *See id.* He wants to make sure that it does not happen to any other inmate. *See id.* He requests that I hold anyone who was involved in causing his pain and suffering liable for their conduct. *See id.*

I. **Assistant Federal Public Defender Maguire**

Style claims that on October 31, 2016, correctional staff informed him that an attorney, who he later learned was Assistant Federal Public Defender Maguire, had come to visit him. Style did not actually meet with or see Attorney Maguire. Style alleges that Attorney Maguire falsely informed correctional staff that one of his children had passed away. Style contends that on November 3, 2016, he met with Attorney Maguire in person and Maguire apologized for disseminating the false information regarding the death of one of his children to correctional staff on October 31, 2016.

As of October 31, 2016, Assistant Federal Public Defender Maguire had been appointed by this court to represent Style in his federal criminal case. *See United States v. Style*, Case No. 16-cr-193(AVC) (Doc. Nos. 7, 9, 11, 14, 17, 30, 34). As an appointed assistant federal public defender, Maguire was not a "person" acting under color of state or federal law for purposes of stating a claim under section 1983 or *Bivens*. *See, e.g.*, *Polk County v. Dodson*, 454 U.S. 312, 102 (1981) (public defenders do not act under color of state law); *Yancey v. City of Buffalo*, 2012 WL 6016890, at *2 (W.D.N.Y. Nov. 30, 2012) (dismissing claim against assistant federal public defender who represented inmate in federal criminal case because attorney was not a person for purposes of *Bivens*); *Ramos v. Winiewicz*, 2012 WL 1044530, at *4 (W.D.N.Y. Mar.

5

23, 2012) (court-appointed assistant federal public defender not a federal actor for purposes of *Bivens*); *Faison v. Maccarone*, 2012 WL 681812, at *13 n.19 (E.D.N.Y. Mar. 1, 2012) ("To the extent plaintiff alleges that [the defense counsel] is a federal actor liable under *Bivens*, it is clear that a defense attorney's advocacy in federal court does not cause him to assume the role of a federal actor." (citation omitted)); *McCurvin v. Law Offices of Koffsky & Walkley*, 2003 WL 223428, at *3 (D. Conn. Jan. 27, 2003) (attorneys appointed by federal court "did not assume a federal status by being appointed defense counsel" for purposes of a *Bivens* action).

Because an assistant federal public defender appointed by the court to represent a defendant does not act under color of federal law, the allegation against Maguire regarding information he allegedly disclosed to officers at Hartford Correctional on October 31, 2016, when he arrived at the facility to visit Style, fails to state a claim upon which relief may be granted. Accordingly, the claim against Attorney Maguire is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

## II.    Correctional Officers Doe, Brown and Dastasi

Styles claims that on October 31, 2016, Officers Brown and Dastasi informed him that an attorney wanted to meet with him because one of his children had passed away. Officers Brown, John Doe #2, and John Doe #3 did not permit Style to call his family regarding the alleged death of one of his children. Officer John Doe #3 did permit Style to meet with a mental health worker, who granted Style's request to contact his sister. Officers Brown, Dastasi, and John Doe #1 also could not or would not identify the attorney who had come to visit him that day.

The Supreme Court has held that an inmate's conditions of confinement must only meet "minimal civilized measures of life's necessities" to survive an Eighth Amendment challenge. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). This means that prison officials must only provide

6

for inmates' "basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety." *DeShaney v. Winnebago Cty. Dep't of Social Servs.*, 489 U.S. 189, 200 (1989). To state an Eighth Amendment conditions of confinement claim, an inmate must meet both an objective and subjective requirement. First, the inmate must allege an objectively "sufficiently serious" deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Second, the inmate must show that the official acted with a "sufficiently culpable state of mind", which, in prison-conditions cases is "deliberate indifference". *Id.* Allegations constituting mere negligence are not cognizable under section 1983. *See Hayes v. New York City Dep't of Corrections*, 84 F.3d 614, 620 (2d Cir. 1996).

The allegations regarding the information disseminated to Style by Officer Brown regarding the wellbeing of one of his children and delay in permitting Style to telephone his family to confirm the information do not state plausible claims for violations of Style's Eighth Amendment rights. Style does not assert that the conduct of any of the defendants deprived him of a basic human need. Although Officers Brown, John Doe #2, and John Doe #3 initially did not permit him to contact his family, a mental health worker allowed to call his family later that day to confirm that none of his children had died. Because Style has not alleged that Officers Brown, Dastasi, John Doe #1, John Doe #2, and John Doe #3 deprived him of a basic human need, the claims against those defendants are dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(b)(1).

### III.     Warden Faneuff

Style contends that on December 23, 2016, Warden Faneuff responded to his request for an investigation into the dissemination of inaccurate information about the wellbeing of one of his children. The warden stated that correctional staff mistakenly attributed information

7

regarding the death of another's inmate's child to Style. *See* Compl., Exs., Doc. No. 1-1 at 18. Warden Faneuff apologized to Style regarding the mistake and for any distress it might have cause Style. *See id.*

Style claims that he then sent a request to Commissioner Semple regarding the incident. On January 27, 2017, Style met with Warden Faneuff. During the meeting, Warden Faneuff and other unidentified officers verbally threatened him "in a profanity lace[d] tirade" because the Commissioner had sent Warden Faneuff paperwork regarding Style's complaint about the dissemination of false information regarding his children. *See* Compl., Doc. No. 1 at 9.

Verbal harassment and threats do not rise to the level of a constitutional violation. *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (holding that verbal harassment and name calling, absent physical injury, are not constitutional violations cognizable under section 1983); *Cotz v. Mastroeni*, 476 F. Supp. 2d 332, 372 (S.D.N.Y. 2007) (holding that verbal harassment and threats, regardless of how inappropriate, unprofessional or reprehensible, do not violate a federally protected right and are not cognizable under section 1983). Accordingly, any claim of verbal harassment and threats by Warden Faneuff is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

To the extent that Style is claiming that Warden Faneuff verbally harassed him in retaliation for filing a request or complaint with Commissioner Semple, the claim fails. When prison officials take adverse action against an inmate, motivated by the inmate's exercise of a protected constitutional right, a section 1983 retaliation claim may be sustained. *See Friedl v. City of N.Y.*, 210 F.3d 79, 85 (2d Cir. 2000). Because claims of retaliation are easily fabricated, the courts consider such claims with skepticism and require that they be supported by specific

facts. Thus, conclusory allegations of retaliatory conduct are not sufficient. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983). To state a retaliation claim, a plaintiff must show that (1) his conduct or speech was protected by the Constitution or federal law; (2) prison officials took adverse action against him; and (3) the protected conduct or speech was a substantial or motivating factor in the alleged retaliatory or adverse action by prison officials. *See Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citations and internal quotation marks omitted).

Style alleges only that Warden Faneuff engaged in verbal name calling and profanity when he visited Faneuff regarding the incident that had occurred on October 31, 2016. Such verbal harassment does not constitute adverse action sufficient to support a retaliation claim. *See Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) ("Insulting or disrespectful . . . [or] sarcastic comments [directed at an inmate] do not, without more, constitute an adverse action."); *Reed v. Doe No. 1*, 2013 WL 5441503, at *6 (N.D.N.Y. Sept. 27, 2013) ("It is well-established, however, that verbal harassment and derogatory comments by prison workers aimed at an inmate, however unprofessional, do not rise to a level of constitutional significance, and therefore cannot constitute adverse action sufficient to support a retaliation cause of action."); *Lunney v. Brureton*, 2007 WL 1544629, at *17-18 (S.D.N.Y. May 29, 2007) (allegations of threatening language regarding inmate's transfer in response to submission of written grievances did not constitute adverse action that would have "deter[ed] a person of ordinary firmness from exercising First Amendment rights"), *objections overruled*, 2007 WL 2050301 (S.D.N.Y. July 18, 2007); *Bartley v. Collins,* 2006 WL 1289256, at *6 (S.D.N.Y. May 10, 2006) (finding, in retaliation cases, that "verbal threats such as 'we going to get you, you better drop the suit,' do not rise to the level of adverse action"). Accordingly, the First Amendment retaliation claim against Warden Faneuff is

dismissed. *See* 28 U.S.C. § 1915A(b)(1).

## IV. United States Marshals

Style describes defendant U.S. Marshals as working for the United States of America. He generally asserts that U.S. Marshals were aware of the incident that occurred on October 31, 2016, and were aware that he was not receiving medical and dental treatment at Hartford Correctional. Marshals transferred Style to a federal detention center on February 2, 2017, pursuant to an order issued by United States District Judge Alfred V. Covello in Style's federal criminal case, *United States v. Style*, Case No. 3:16-cr-00193(AVC).

Style does not indicate in which capacity he is suing the defendant identified as United States Marshals. It is also unclear whether Style is actually suing the United States Marshals Service as a federal agency.

Under *Bivens*, an inmate may only sue the government officials responsible for the constitutional violation and not the federal agency where they are employed. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 483-86 (1994) (Bivens does not imply cause of action against the federal government or its agencies); *Razzoli v. Executive Office of U.S. Marshals.* No. 10–CV–4269 CBA, 2010 WL 5051083, at *3 (E.D.N.Y. Dec. 2, 2010) (noting that *Bivens* claim cannot be brought against the United States Marshals Service). A claim against a federal employee in her official capacity is, essentially, a suit against the United States. *See Meyer*, 510 U.S. at 485–86. The United States has not waived its sovereign immunity for damages claims arising from actions of federal employees in their official capacities and *Bivens* does not authorize such claims. *See Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 510 (2d Cir. 1994) (holding that *Bivens* claim against federal defendants in their official capacities was barred by

10

sovereign immunity and properly dismissed). Thus, any claims against the United States Marshals Service or the United States Marshals in their official capacities are not cognizable in a *Bivens* action and must be dismissed for lack of subject matter jurisdiction. *See* 28 U.S.C. § 1915A(b)(1).

To the extent that Style intended to sue individual United States Marshals or employees of the United States Marshals Service, he has not alleged that they violated his constitutionally protected rights. The fact that unidentified U.S. Marshals may have been aware of the incident involving the dissemination of inaccurate information about the well-being of one of Style's family members does not state a claim of a violation of Style's constitutional rights. As indicated above, I have concluded that the claim that Officers Brown, Dastasi, and Doe improperly disseminated false information about Style's children does not describe a deprivation of a basic human need in violation of the Eighth Amendment. Thus, any claim against the U.S. Marshals regarding the incident that occurred on October 31, 2016 is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

Furthermore, the statement that U.S. Marshals were allegedly aware of Style's need for dental and/or medical treatment does not state a claim of a violation of Style's Eighth Amendment rights. There are no facts in the complaint that describe the dental or medical conditions that Style allegedly suffered from during his confinement at Hartford Correctional Center from October 2016 to January 2017. In attachments to the complaint, Style describes his dental condition as a painful tooth and his medical conditions as back and neck pain. *See* Compl., Exs., Doc. No. 1-1 at 4-6, 11-12, 14-15. Style does not allege that he made U.S. Marshals aware of his medical and dental conditions or requests for treatment or articulate how

the U.S. Marshals might otherwise have been aware of his medical and dental needs. Nor do the exhibits, which are all addressed to, or received from, Hartford Correctional employees, suggest that the U.S. Marshals Service was aware of Style's requests for medical treatment. As such, the facts do not state a plausible claim of deliberate indifference to medical or dental needs against the U.S. Marshals. Those claims are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

Style also suggests that the U.S. Marshals did not transfer him to a federal facility in a timely manner. The United States Supreme Court has held that an inmate has no right to be housed at the prison of his or her choice. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) (inmates have no right to be confined in a particular state or a particular prison within a given state); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (transfer among correctional facilities, without more, does not violate inmate's constitutional rights, even where conditions in one prison are "more disagreeable" or the prison has "more severe rules").

Furthermore, Style concedes that in his federal criminal case Judge Covello granted his motion to be transferred to a federal facility on January 24, 2017, and that the U.S. Marshals Service facilitated his transfer to a federal facility within nine days of Judge Covello's order granting the motion for transfer. There is no indication from the docket entries in Style's federal criminal case as to when the U.S. Marshals Service might have received notice of the transfer order. Nor are there facts to suggest that the time frame involving the transfer was excessive or caused Style to suffer any injury or harm. Accordingly, the claim against the U.S. Marshals regarding Style's transfer to a federal facility is dismissed as failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(b)(1).

## V.     Delay in Receipt of Legal Papers

Style claims that Hartford Correctional tampered with his legal mail by failing to deliver it to him in a timely manner. Hartford Correctional is not a named defendant in this action. Furthermore, a correctional facility is not a person for purposes of section 1983. *See Fisher v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973) (state prison department cannot be sued under section 1983 because it does not fit the definition of "person" under section 1983); *Brady v. Chittenden Corr. Facility*, 2012 WL 5929950, at *3 (D. Vt. Oct. 18, 2012) ("A prison facility itself . . . is not a 'person' within the meaning of § 1983 and is therefore not amenable to suit under that section."), *report and recommendation adopted*, 2012 WL 5935702 (D. Vt. Nov. 27, 2012); *Santos v. Department of Correction*, 2005 WL 2123543, at *3 (D. Conn. Aug. 29, 2005) (holding that the State of Connecticut Department of Correction is not a "person" within the meaning of section 1983). In addition, even if the individual who was responsible for the delay in mail delivery was named as a defendant, the claim fails.

The First Amendment protects an inmate's right of access to the courts and access to the free flow of incoming and outgoing correspondence. *See Davis*, 320 F.3d at 351; *Heimerle v. Attorney General*, 753 F.2d 10, 12-13 (2d Cir. 1985). To state a First Amendment claim, a prisoner must allege that the interference with his incoming or outgoing mail was both regular and unjustified. *See Davis*, 320 F.3d at 351. Thus, isolated incidents of interference with legal mail are insufficient to state a constitutional violation. *See id.*

The plaintiff alleges that on December 15, 2016, his attorney sent him legal papers to bring to court. He did not receive the mail from his attorney until December 27, 2016. The mail was open when he received it. These allegations do not state a claim of regular interference

13

with outgoing or incoming mail. *See Davis*, 320 F.3d at 351-52 (inmate failed to "state a constitutional claim for violating his right to send and receive legal mail because he allege[d] neither the establishment of an ongoing practice by prison officials of interfering with his mail nor any harm suffered by him from the tampering"); *Shepherd v. Fisher*, 2011 WL 3278966, at *3 (S.D.N.Y. July 27, 2011) (holding that three alleged instances of interference with legal mail were insufficient to allege an underlying "ongoing practice"). Thus, I conclude that the plaintiff has failed to state a claim of regular interference with his legal mail under the First Amendment against any of the defendants. This First Amendment claim is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

## ORDERS

It is hereby ordered that:

(1) All section 1983 and *Bivens* claims against the defendants are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). I decline to exercise supplemental jurisdiction over any remaining state law claims. *See* 28 U.S.C. § 1367(c)(3); *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 117-18 (2d Cir. 2013). The Motion for Status of Case (doc. # 8) is **DENIED** as moot.

If the plaintiff chooses to appeal this decision, he may not do so *in forma pauperis,* because such an appeal would not be taken in good faith. *See* 28 U.S.C. § 1915(a)(3).

(2) The Clerk is directed to enter judgment for the defendants and close this case.

SO ORDERED at Bridgeport, Connecticut this 1st day of September 2017.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge
